Thomas A. Banducci (ISB: 2453)
tbanducci@bwslawgroup.com
Wade L. Woodard (ISB: 6312)
wwoodard@bwslawgroup.com
**BANDUCCI WOODARD SCHWARTZMAN PLLC**
802 W. Bannock Street, Suite 500
Boise, ID 83702
Telephone    208.342.4411
Facsimile    208.342.4455

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ALAMAR RANCH LLC,<br><br>  Plaintiff,<br><br>vs.<br><br>COUNTY OF BOISE,<br><br>  Defendant. | Case No.<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff, Alamar Ranch, LLC ("Alamar"), by and through its counsel of record, Banducci Woodard Schwartzman, PLLC, for its complaint, alleges as follows:

## PARTIES

1. Alamar is an Idaho limited liability company and the developer of a proposed residential treatment facility ("RTC") and private school that would be located on a portion of a 123-acre parcel located at 94 Klam Ranch Road, in Boise County, Idaho (the "Property").

/ / /

**COMPLAINT AND DEMAND FOR JURY TRIAL – PAGE 1**

2. The County of Boise ("Boise County") is a political subdivision of the State of Idaho having jurisdiction to make land use and zoning decisions in the unincorporated areas of the County of Boise, through the Board of Commissioners (the "Commission") and through the Boise County Planning and Zoning Commission ("P & Z").

## JURISDICTION AND VENUE

3. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. Venue is properly conferred on this Court pursuant to 28 U.S.C. § 1391(b) because, upon information and belief, Boise County is subject to personal jurisdiction in this District, the events took place in this District and the at-issue real property is located in this District.

## GENERAL ALLEGATIONS

4. This case arises out of Boise County's violations of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* ("FHA").

5. At all relevant times Boise County was zoned as "mixed use," meaning dissimilar uses were intended to coexist. That coexistence is sometimes ensured through the conditional use process.

6. On April 19, 2007, Alamar submitted an application to the P & Z requesting a Conditional Use Permit ("CUP") allowing Alamar to operate a 72-bed RTC and private school on the Property. The would-be residents of the proposed RTC are deemed to be "handicapped" for purposes of the FHA as they would include 12-17 year-old males suffering from mental or emotional illnesses and/or recovering from drug or alcohol abuse. Alamar was required to apply for a CUP because the RTC is identified by Boise County as a use to be reviewed by Boise County under the conditional use process. The question under the CUP process, however, is not whether this proposed use should be allowed (it is an allowed use) but whether conditions of

**COMPLAINT AND DEMAND FOR JURY TRIAL – PAGE 2**

approval are warranted to ensure that such use does not "cause any damage, hazard, nuisance or other detriment to persons, property, or natural resources in the vicinity."

7.  On August 2, 2007, Alamar presented its application to the P & Z during a public hearing. Members of the public testified for and against the application. On August 15, 2007, the P & Z once again convened to request responses from both Alamar as well as members of the public opposed to the application.

8.  During both hearings the opponents of the application, consisting mostly of local residents, objected to the application on numerous discriminatory grounds. The message that was presented by these opponents in essence was "we don't want teenage alcoholics and drug addicts in our neighborhood."

9.  Demonstrators against Alamar made their feelings known not only during the hearings, but also by presenting false and misleading information on their blog site (www.noalamararanch.com), illegal signs on State Highway 21, and a folk-singer rally—all designed to stir up frenzy and fear among the residents of Boise County.

10. Although Alamar satisfied its burden of demonstrating at the hearing that Alamar's project satisfied each of the nine standards in the Boise County Zoning and Development Ordinance ("BCZDO") for issuance of a CUP, the application was denied by vote of the P& Z commissioners at the conclusion of the August 15, 2007 hearing (the P & Z arrived at a 3-3 tie vote on the motion, which Boise County deemed a denial of the application).

11. On September 28, 2007, the P & Z issued a written decision denying Alamar's application. Because there was no basis within the CUP standards to deny the application, the P & Z commissioners, as a pretext, manufactured the following reasons for the denial of the application: (1) "the development of the residential treatment center was not appropriate in the

**COMPLAINT AND DEMAND FOR JURY TRIAL – PAGE 3**

proposed location at the current time"; and (2) "the County lacked sufficient infrastructure or money to monitor and enforce the conditions that were proposed for approval of the application." Neither rationale is among those listed in the BCZDO for denial of a CUP.

12. On October 18, 2007, Alamar timely filed a notice of appeal of the P & Z's decision to the Boise County Board of Commissioners ("Board"). In its appeal, Alamar informed Boise County that it had a duty under the FHA to approve the CUP and allow the project to be built so that housing could be made available for the "handicapped" youth that Alamar proposed to serve. In its appeal brief, Alamar requested Boise County to make reasonable accommodations to allow this housing to be built to serve "handicapped" youth.

> Alamar Ranch respectfully requests that the commission (1) identify the specific provisions of Boise County's ordinance that it believed would have to be waived or varied to allow the development, (2) identify the specific aspects of the development that alleged do not comply with the ordinance, and then (3) consider whether those aspects of the code can be waived or varied to accommodate Alamar Ranch's request.

13. The Board heard the appeal at a public hearing held on January 28, 2008. The Board closed the public hearing, but did not deliberate toward a decision. Again, both at the hearing and outside of the hearing, the opposition was extremely vocal and threatening. The opposition's message was the same: "we don't want teenage alcoholics and drug addicts in our neighborhood."

14. The Board deliberated (on the record) on March 10, 2008. The Board, knowing that it could not issue an absolute denial of the application, instead reversed the denial of the application. In doing so, however, it carried out its discriminatory purpose of preventing the project from being built by knowingly imposing numerous conditions on the CUP that individually or cumulatively made the proposed use of the property impossible. In essence, the

**COMPLAINT AND DEMAND FOR JURY TRIAL – PAGE 4**

conditions were a pretext designed to conceal the Board's discriminatory motive of preventing the project from being built.

15. On April 21, 2008, the Board entered a written decision and order delineating several onerous, arbitrary and discriminatory conditions for the permit. Among the conditions which made the proposed use of the site impossible, were the following: (1) limiting the number of residents at Alamar to 24, (2) requiring Alamar to construct a helicopter landing pad at the site, and (3) requiring Alamar to purchase and maintain a fire suppression vehicle on the site.

16. As a result of the conditions placed on the CUP by the Board, the proposed RTC is no longer economically feasible. By itself, the condition limiting the number of residents destroyed the economic viability of the project. In essence, Boise County refused Alamar's request for reasonable accommodations by placing conditions on the CUP aimed at ensuring the project would not be economically feasible.

17. Boise County's conduct prevented the project from being developed and thereby prevented Alamar from building housing that would serve youth protected under the FHA. In so doing, Boise County has violated the FHA.

18. The would-be residents of the RTC proposed by Alamar are "handicapped" for purposes of the FHA.

19. Alamar, as the developer of housing for handicapped individuals, is an "aggrieved person" that may bring this action.

### COUNT ONE
### VIOLATION OF THE FHA:
### REASONABLE ACCOMMODATION

20. The allegations included in the above paragraphs are incorporated by reference and made a part hereof.

**COMPLAINT AND DEMAND FOR JURY TRIAL – PAGE 5**

21. As set forth above, Alamar submitted an application to develop a residential treatment center for handicapped individuals.

22. Boise County knew or reasonably should have known the application was for housing for handicapped individuals.

23. Accommodation of the handicap is necessary to afford the would-be residents an equal opportunity to use and enjoy the dwellings.

24. The accommodation requested by Alamar was reasonable.

25. Boise County refused to make the necessary accommodation by placing onerous, arbitrary and unreasonable conditions on the approval of the application which destroyed the feasibility of the project.

26. As a result of Boise County's violations of the FHA, Alamar has suffered damages in excess of the jurisdictional minimum of this Court. Alamar will establish the precise amount of damages according to proof at trial.

## COUNT TWO:
## VIOLATION OF THE FHA
## DISPARATE TREATMENT

27. The allegations included in the above paragraphs are incorporated by reference and made a part hereof.

28. Alamar applied for, and was qualified to receive, a conditional use permit for the proposed RTC.

29. Boise County effectively denied the permit by placing onerous, arbitrary and unreasonable conditions on the permit.

30. Upon information and belief, Boise County has approved other developments without such conditions.

**COMPLAINT AND DEMAND FOR JURY TRIAL – PAGE 6**

31. Upon information and belief, a discriminatory reason more likely than not motivated the challenged decision of Boise County.

32. As a result of Boise County's discriminatory conduct, Alamar has suffered a distinct and palpable injury. The damages suffered by Alamar are in excess of the jurisdictional minimum of this Court. Alamar will establish the precise amount of damages according to proof at trial.

## COUNT THREE:
## VIOLATION OF THE FHA
## PROHIBITION AGAINST INTERFERENCE

33. The allegations included in the above paragraphs are incorporated by reference and made a part hereof.

34. The anticipated residents of the RTC described in Alamar's application are protected under the FHA.

35. Alamar aided or encouraged these would-be residents in the exercise of their rights to housing under the FHA.

36. Boise County unlawfully interfered with the exercise of those rights by obstructing the construction or availability of housing for individuals protected under the FHA. Pursuant to 42 U.S.C. § 3613(c), Alamar requests punitive damages.

37. As a result of Boise County's violations of the FHA, Alamar has suffered damages in excess of the jurisdictional minimum of this Court. Alamar will establish the precise amount of damages according to proof at trial.

## REQUEST FOR PUNITIVE DAMAGES

38. Pursuant to 42 U.S.C. § 3613(c), Alamar requests punitive damages.

**COMPLAINT AND DEMAND FOR JURY TRIAL – PAGE 7**

## REQUEST FOR ATTORNEYS FEES

39. Pursuant to 42 U.S.C. § 3613(c), Alamar requests its attorneys' fees and costs.

WHEREFORE, Alamar respectfully requests this Court to enter judgment in its favor and against Boise County as follows:

A. Awarding Alamar damages in an amount to be proven at trial;

B. Awarding Alamar punitive damages;

C. Awarding Alamar its reasonable costs and expenses;

D. Awarding Alamar its reasonable attorneys' fees; and

E. Awarding Alamar such other and further relief as the Court deems just and proper.

Dated this 8th day of January, 2008.

/s/
Thomas A. Banducci, ISB 2453
tbanducci@bwslawgroup.com
**BANDUCCI WOODARD SCHWARTZMAN PLLC**
802 W. Bannock Street, Suite 500
Boise, ID 83702
Telephone    208.342.4411
Facsimile    208.342.4455

**COMPLAINT AND DEMAND FOR JURY TRIAL – PAGE 8**