Thomas A. Banducci (ISB: 2453)
tbanducci@bwslawgroup.com
Wade L. Woodard (ISB: 6312)
wwoodard@bwslawgroup.com
Dara Labrum (ISB: 7177)
dlabrum@bwslawgroup.com
**BANDUCCI WOODARD SCHWARTZMAN PLLC**
802 W. Bannock Street, Suite 500
Boise, ID 83702
Telephone    208.342.4411
Facsimile    208.342.4455

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ALAMAR RANCH, LLC, an Idaho limited liability company; and YTC, LLC, an Idaho limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF BOISE, a political subdivision of the State of Idaho,<br><br>Defendant. | Case No. 1:09-cv-00004 BLW<br><br>**DECLARATION OF CHARLES A. WILHOITE IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE** |

I, Charles A. Wilhoite, declare as follows:

1. I have personal knowledge of the averments contained in this Declaration.

2. I maintain professional designations as a Certified Public Accountant/Accredited in Business Valuation, and an Accredited Senior Appraiser in business valuation. These

designations, among others, are described in my curriculum vitae, which is attached to my previously submitted expert opinion.

3. My prior experience valuing businesses includes the valuation of assisted living facilities and educational entities, which have comparable operating characteristics relative to the planned operations at Alamar Ranch.

4. Based on my professional training and experience with regard to business valuation and related financial and economic analysis, I have been retained by Alamar Ranch, LLC ("Alamar Ranch" or the "Company") and YTC, LLC ("YTC"), to provide an independent estimate of the economic damages Alamar Ranch and YTC experienced as a result of the alleged violations of the Fair Housing Act committed by the County of Boise which prevented Alamar Ranch and YTC from developing a residential treatment center on property owned by YTC in Boise County.

5. For the purpose of completing this analysis and developing my opinions, I have reviewed various financial, corporate and related documents and information provided to me relating to Alamar Ranch, YTC and this litigation, and conducted independent research and analysis with regard to relevant industry (i.e., youth programs and miscellaneous residential care facilities), economic, and investment considerations.

6. I have developed my opinions based on consideration of (1) the *Uniform Standards of Professional Appraisal Practice* ("USPAP"), as promulgated by The Appraisal Foundation; (2) the *Principles of Appraisal Practice and Code of Ethics* and *Business Valuation Standards* of the American Society of Appraisers; (3) the *Statement on Standards for Valuation Services*, as issued by the American Institute of Certified Public Accountants Consulting Services Executive Committee; (4) generally accepted financial, economic, and valuation theory; and (5) relevant court precedents.

DECLARATION OF CHARLES A. WILHOITE
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT – PAGE 2

7.   In valuing Alamar Ranch, LLC, and YTC, LLC, it was necessary to establish the reasonableness of these entities' business projections.

8.   Among the factors I considered in developing my opinion about these business projections were industry and economic considerations such as the density of similar facilities in the local and regional market, the opportunity for the facility to fulfill an unmet or underserved need in the local and regional market, growth in the industry, growth in industry profit margins, companies with a similar operating focus to Alamar Ranch and the profit margins of these companies, competition with not-for-profit organizations which can offer services at lower cost, competition in the industry in general, the reasonableness of the tuition that Alamar Ranch proposed to charge, and access to qualified professionals to operate the facility and care for the residents.

9.   The process of examining industry and economic considerations is regularly completed by valuation experts. These industry and economic facts and data are particularly relevant and necessary where, as with Alamar Ranch, the business is evaluated based on the analysis of projected operating results rather than historical data. Under these circumstances, consideration of industry and economic data is both a relevant and necessary step for the purpose of (i) assessing the reasonableness and achievability of the projections, and (ii) estimating the risk inherent in the projections for the purpose of developing a reasonable discount rate.

10.   My opinion is based upon sufficient facts and data. These facts and data, including publicly available data regarding relevant industry and economic considerations, are of a type typically relied upon by experts in the valuation field for the purpose of forming conclusions and opinions incorporated in the valuation of development-stage businesses (i.e., early-stage companies for which there is no historical performance data).

DECLARATION OF CHARLES A. WILHOITE
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT – PAGE 3

11. The valuation methodology I have applied to the facts of this case, including examining relevant economic and industry data, represents generally accepted, reliable methodology based on generally accepted valuation practice, and recognized financial and economic principles. Section b(ii) of Standards Rule 9-4 of the *Uniform Standards of Professional Appraisal Practice* states that consideration of "data regarding financial and economic conditions affecting the business enterprise, its industry, and the general economy," should be included in analyses. The American Society of Business Appraisers *Business Valuation Standards* similarly state, in BVS-I *General Requirements for Developing a Business Valuation*, under Section III—*Information Collection and Analysis*, that "The Appraiser shall gather, analyze, and adjust relevant information to perform the valuation as appropriate to the scope of work. Such information shall include the following: . . . E. Nature and conditions of the relevant industries which have an impact on the business. F. Economic factors affecting the business. G. Capital markets providing relevant information, e.g., available rates of return on alternative investments, relevant public stock transactions, and relevant mergers and acquisitions."

Finally, discounted cash flow analysis represents the primary valuation methodology for estimating the value of a development-stage business with no historical operating history. As stated in *Valuing A Business—The Analysis and Appraisal of Closely Held Companies* (McGraw-Hill, 2008, Fifth Ed., pg. 175): "In theory, the value of a business or an interest in a business depends on the future economic benefits that will accrue to the business, with the value of those future benefits being discounted back to a present value at some appropriate discount rate. In other words, the basic concept of the income approach is to project the future economic

income associated with the investment and to discount this projected income stream to a present value at a discount rate appropriate for the expected risk of the prospective income stream."

12. The process of examining relevant economic and industry conditions and data is a necessary and standard step in any valuation or economic damages analysis, regardless of the nature of the business being evaluated and regardless of the valuation method employed to estimate the value of the subject business.

I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct to the best of my knowledge and belief.

DATED this 16th day of February 2010.

*[signature]*
Charles A. Wilhoite