IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ALAMAR RANCH, LLC, an Idaho limited liability company; and YTC, LLC, an Idaho limited liability company,<br><br>              Plaintiffs,<br><br>     v.<br><br>COUNTY OF BOISE, a political subdivision of the State of Idaho,<br><br>              Defendant. | Case No.  CV 09-04-S-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

Before the Court are Plaintiffs' Motion for Partial Summary Judgment (Docket No. 51), Defendant's Motion for Summary Judgment (Docket No. 52), and Defendant's Motion to Strike documents offered by Plaintiff (Docket No. 72). The Court has reviewed the parties' pleadings, including post-hearing letter briefs requested by the Court, and has considered oral argument from hearing on February 17, 2010.  For the following reasons, the Court will grant in part and deny in part, Plaintiff's Motion for Partial Summary Judgment, and grant in part and deny in part Defendant's Motion for Summary Judgment.  In so ruling, the Court did not rely on the documents at issue in Defendant's Motion to Strike, thus rendering that motion moot.

**Memorandum Decision & Order - 1**

# BACKGROUND

Plaintiffs Alamar Ranch and YTC filed this lawsuit alleging that Defendant Boise County violated the Fair Housing Act (FHA).  According to Plaintiffs, Defendant violated the FHA by effectively denying Plaintiffs a conditional use permit to construct a residential treatment center for troubled youth.  Plaintiffs move for partial summary judgment, requesting findings that (1) Plaintiffs are aggrieved parties under the FHA, and (2) that Defendant violated the FHA by failing to grant Plaintiffs reasonable accommodations.  *Plaintiffs' Motion* (Docket No. 51).  Defendants move for summary judgment to dismiss each of Plaintiffs' claims, and find that punitive damages are unavailable, as a matter of law. *Defendant's Motion* (Docket No. 52).

# ANALYSIS

## A.    Summary Judgment Standard of Review

A primary purpose of the summary judgment rule "is to isolate and dispose of factually unsupported claims . . . ."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources."  *Id*. at 327.  "[T]he mere existence of

**Memorandum Decision & Order - 2**

some alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment; the requirement is that there be

no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242,

247-48 (1986).

The evidence must be viewed in the light most favorable to the non-moving

party, and the Court must not make credibility findings. *Id.* at 255. Direct

testimony of the non-movant must be believed, however implausible. *Leslie v.

Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is

not required to adopt unreasonable inferences from circumstantial evidence.

*McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988). The Court must be

"guided by the substantive evidentiary standards that apply to the case." *Liberty

Lobby*, 477 U.S. at 255. If a claim requires clear and convincing evidence, the

issue on summary judgment is whether a reasonable jury could conclude that clear

and convincing evidence supports the claim. *Id.*

The moving party bears the initial burden of demonstrating the absence of a

genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir.

2001)(en banc). To carry this burden, the moving party need not introduce any

affirmative evidence (such as affidavits or deposition excerpts) but may simply

point out the absence of evidence to support the nonmoving party's case. *Fairbank*

**Memorandum Decision & Order - 3**

*v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000). This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex,* 477 U.S. at 324. The Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir.2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

Only admissible evidence may be considered in ruling on a motion for summary judgment. *Orr v. Bank of America,* 285 F.3d 764, 773 (9th Cir.2002); *see also* Fed.R.Civ.P. 56(e). In determining admissibility for summary judgment purposes, it is the contents of the evidence rather than its form that must be considered. *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003). If the contents of the evidence could be presented in an admissible form at trial, those contents may be considered on summary judgment even if the evidence itself is

**Memorandum Decision & Order - 4**

hearsay.  *Id.* (affirming consideration of hearsay contents of plaintiff's diary on summary judgment because at trial, plaintiff's testimony of contents would not be hearsay).  In order to preserve a hearsay objection, "a party must either move to strike the affidavit or otherwise lodge an objection with the district court." *Pfingston v. Ronan Engineering Co.,* 284 F.3d 999, 1003 (9th Cir. 2002).  In the absence of objection, the Court may consider hearsay evidence.  *Skillsky v. Lucky Stores, Inc.,* 893 F.2d 1088, 1094 (9th Cir. 1990).

Statements in a brief, unsupported by the record, cannot be used to create an issue of fact.  *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995).  The Circuit "has repeatedly held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment."  *Beyene v. Coleman Sec. Services, Inc.,* 854 F.2d 1179, 1182 (9th Cir. 1988).  Authentication, required by Federal Rule of Evidence 901(a), is not satisfied simply by attaching a document to an affidavit.  *Id.*  The affidavit must contain testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document.  *Id.*

## B.   Plaintiffs' Standing

Plaintiffs ask the Court to find that they have standing as aggrieved parties under the FHA.  An "aggrieved person" is defined under the Act as any person

who "(1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur." 42 U.S.C. § 3602(i).  The Supreme Court recognizes a liberal standing requirement for actions brought under the FHA.  *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99 S. Ct. 1601 (1979).  A plaintiff may sue to recover under the FHA without being the direct subject of discrimination, so long as plaintiff has suffered the "[Article] III minima of injury in fact."  *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372, 102 S.Ct. 1114 (1982); *see Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 212, 93 S.Ct. 364 (1972).

Defendant here argues that Plaintiffs lack standing because the relief requested will not redress the injury to would-be residents of Alamar Ranch. *Defendant's Opposition* (Docket No. 59) at 7, *citing Conti v. City of Fremont*, 919 F.2d 1385, 1387 (9th Cir. 1990).  As noted by Plaintiffs, the *Conti* case cited by Defendant is inapplicable because it concerned a plaintiff's standing to redress injuries caused to others rather than to plaintiff himself.  *Id.* at 1387.  Plaintiffs in this case seek relief for interference with Plaintiffs' development of Alamar Ranch. *See Plaintiff's Motion* (Docket No. 51-1) at 7.

Defendant also contends that the profitability – even the mere survival – of Plaintiffs' proposed development is "purely speculative," thus Plaintiffs cannot

**Memorandum Decision & Order - 6**

show injury.  *Defendant's Opposition* (Docket No. 59) at 8.  The Court finds this argument too restrictive, as it could defeat discrimination claims by any proposed housing development.  Such a limited interpretation of the standing requirements is contrary to that envisioned by the Supreme Court in *Gladstone Realtors*, 441 U.S. 91.

The FHA "allows anyone sustaining an actual injury from an alleged discriminatory housing practice to commence a suit."  *San Pedro Hotel Co., Inc. v. City of Los Angeles*, 159 F.3d 470, 475 (9th Cir. 1998)(citation omitted)(property owners had standing under FHA to challenge city's interference with sale of property for development of housing for the mentally disabled); *see also Smith v. Stechel*, 510 F.2d 1162, 1164 (9th Cir. 1975)(realtor who was fired for renting apartments to minorities had standing to sue under the FHA).  Defendant in this case does not explicitly dispute that it impeded the development of Alamar Ranch.  Instead, Defendant argues it was unaware of any impediment to the project's development, and believed that conditions imposed on Alamar Ranch were reasonable.  *Defendant's Opposition* (Docket No. 59) at 9, 12.

The Court finds that Plaintiffs, as developers of the housing project in dispute, were "injured" under *San Pedro Hotel*.  The Court therefore finds that Plaintiffs are aggrieved, and grants summary judgment on that issue.

**Memorandum Decision & Order - 7**

**C.      Reasonable Accommodation**

Both parties seek summary judgment on the issue of reasonable

accommodation.  Under the FHA, it is discriminatory to refuse to make reasonable

accommodations in rules, policies, practices, or services, when such actions may be

necessary to afford handicapped individuals an equal opportunity to use and enjoy

a dwelling.  42 U.S.C. § 3604(f)(3)(B).  To establish that one has suffered

discrimination from a defendant's failure to reasonably accommodate, a plaintiff

must show that: (1) residents of the facility at issue suffer from a handicap as

defined by the FHA; (2) defendant knew or reasonably should have known of the

handicap; (3) an accommodation may be necessary in order to afford residents an

equal opportunity to the use and enjoyment of the dwelling; and (4) defendant

refused to make the accommodation.  *F.G. Budnick v. Town of Carefree*, 518 F.3d

1109, 1119 (9th Cir. 2008); *U.S. v. California Mobile Home Park Management

Co.*, 107 F.3d 1374, 1380 (9th Cir. 1997).

**1.      Handicap of proposed residents**

A handicap is defined under the FHA as "(1) a physical or mental

impairment which substantially limits one or more of such person's major life

activities; (2) a record of having such an impairment; or (3) being regarded as

having such an impairment . . .."  42 U.S.C. § 3602(h).  A physical or mental

**Memorandum Decision & Order - 8**

impairment includes any mental or psychological disorder, such as an emotional illness.  24 C.F.R. § 100.201(a).  A major life activity includes caring for one's self, learning and working.  24 C.F.R. § 100.201(b).

The Ninth Circuit approved a finding that residents of a homeless shelter were handicapped, for purposes of reasonable accommodation analysis, where seventy-five percent of the residents had a "serious physical or mental impairment that affect[ed] a major life activity." *Turning Point, Inc. v. City of Caldwell*, 74 F.3d 941, 942 (9th Cir. 1996).  Also, "[p]articipation in a supervised drug rehabilitation program, coupled with non-use, meets the definition of handicapped." *City of Edmunds v. Washington State Building Code Council*, 18 F.3d 802, 804 (9th Cir. 1994)(citations omitted).  Plaintiffs cite an out-of-circuit case in which students at a proposed residential school for emotionally disturbed adolescents were deemed "handicapped" under the FHA.  *U.S. v. Massachusetts Indus. Finance Agency*, 910 F.Supp. 21 (D.Mass. 1996).  In that case, the proposed school was to admit students with "defining characteristics" that necessarily included diagnoses of one or more professionally recognized psychiatric disorders. *Id.* at 26.  The court concluded that the prospective students were handicapped, as defined under the FHA.  *Id.*

According to deposition testimony by Alamar Ranch's Executive Director,

**Memorandum Decision & Order - 9**

Amy Jeppeson, "a majority" of youths admitted to Alamar Ranch were expected to have substance abuse issues. *Plaintiffs' Exhibits* (Docket No. 51-20) at 3.  Also, Alamar Ranch was intended to assist resident-youths whose disabilities have rendered them "unable to function and learn in a regular home and school environment."  *Declaration of Amy Jeppeson* (Docket No. 51-31) at 2.

The record in this case is less developed than that in *Massachusetts Indus. Finance Agency*.  Unlike in that case, the parties here do not agree that residents of Alamar would all be in need of services to address one or more psychiatric disorders.  The record here is vague with respect to the severity of impairment that proposed residents would suffer.  Plaintiffs describe residents as having substance abuse issues, but do not specifically indicate that residents would be in rehabilitation.  Plaintiffs also imply that some number of residents would suffer from emotional or mental illness, but do not identify specific diagnoses.  Not every learning disability or disciplinary problem qualifies as a physical or mental impairment substantially affecting a major life activity.

Whether or not a sufficient number of residents at Alamar Ranch would have been handicapped so as to deserve protection under the FHA depends on Plaintiffs' intent.  Defendant appears to dispute both the percentage of residents expected to have been impaired, and the degree of the intended residents' impairments.  The

**Memorandum Decision & Order - 10**

Court therefore concludes that there are disputed issues of material fact regarding the first two elements of the reasonable accommodation analysis.

### 2.    Accommodation needed but refused

As to the third element, Plaintiffs must show that "but for the accommodation, [the disabled] will likely be denied an equal opportunity to enjoy the housing of their choice." *Budnick*, 518 F.3d at 1119, *quoting Cal. Mobile Home Park Mgt.*, 107 F.3d at 1380 (other citation omitted).  In this case, the parties do not agree what the reasonable accommodation was, let alone whether it was denied – the fourth element in this analysis.

A reasonable accommodation must be for the benefit of the disabled, and not merely the personal gain of a developer.  *Sanghvi v. Claremont*, 328 F.3d 532, 538 (9th Cir. 2003).  The courts have not established whether application for a special use permit suffices as a request for a reasonable accommodation.  *Budnick*, 518 F.3d at 1119.  However, the Ninth Circuit has noted that city policies that deny permits for the development of handicap housing "directly interfere with use and enjoyment by preventing the housing from being built."  *Cal. Mobile Home Park Mgt.*, 107 F.3d at 1382 n. 3.

In this case, Plaintiffs applied for a special use permit to develop Alamar Ranch.  According to Plaintiffs, Defendant placed a number of conditions on

**Memorandum Decision & Order - 11**

Plaintiffs' permit that made development of Alamar Ranch infeasible.  These conditions included an occupancy restriction, requirement of a fire suppression vehicle and storage, and construction of a secondary access road.  Each of these requirements, Plaintiffs argue, was prohibitively expensive, thus precluding construction of housing for the use and enjoyment of the handicapped.  Plaintiffs contend that a reasonable accommodation would have been to grant a special use permit without such prohibitive conditions.

Defendant argues that the conditions imposed were reasonable, and for legitimate safety concerns.  Defendant contends that, even if Plaintiffs could show the conditions were not feasible, Plaintiffs never informed Defendant as much.  According to Defendant, Plaintiffs filed this lawsuit without requesting that the conditions be removed, or otherwise engaging in an "interactive process" for agreeing upon a reasonable accommodation.  *Defendant's Opposition* (Docket No. 59) at 10-12.  Defendant thus reasons that it did not refuse to make a reasonable accommodation.

Plaintiffs maintain that they requested reasonable accommodations throughout the administrative process with Defendant Boise County.  Plaintiffs contend, contrary to Defendant's arguments, that the 24-bed occupancy requirement imposed by Defendant was intended to render the project infeasible,

**Memorandum Decision & Order - 12**

and had no safety (or other reasonable) basis.  Plaintiffs cite statements by
Defendant's attorney during deliberations before the Boise County Board of
Commissioners acknowledging that an occupancy restriction would adversely
affect the project's development.  *Plaintiff's Opposition* (Docket No. 57) at 7.

The Court finds that neither party has satisfied their burden of proving
summary judgment regarding reasonable accommodation.  Both parties argue that
their version of the facts supports findings by the Court, as a matter of law.
However, it is clear that those facts are in serious dispute.  To the extent there are
mixed questions of law and fact, summary judgment is not appropriate where the
factual issues are genuinely disputed.  *See Posey v. Lake Pend Oreille School Dist.
No. 84*, 546 F.3d 1121, 1123 (9th Cir. 2008).  The Court finds that there are
genuine issues of material fact properly left for a jury to decide.  Accordingly,
Plaintiffs' and Defendant's Motions for summary judgment on this issue are
denied.

## D.   Defendant's Remaining Challenges

### 1.   Disparate treatment

To establish a prima facie case of disparate treatment, a plaintiff must show:

> (1) the "plaintiff is a member of a protected class"; (2)
> the plaintiff "applied for a [special] use permit and was
> qualified to receive it;" (3) the permit was denied despite
> plaintiff's qualification; and (4) "defendant approved a

> [special] use permit for a similarly situated party during a
> period relatively near the time" it denied plaintiff's
> request.

*Budnick*, 518 F.3d at 1114, *quoting Gamble v. City of Escondido*, 104 F.3d 300,

305 (9th Cir. 1997).  Where these elements are established, the burden of proof

shifts to defendant to "articulate a 'legitimate non-discriminatory reason for its

action.'" *Id.*  The burden then shifts back to plaintiff to show by a preponderance

of evidence that "defendant's asserted reason is a pretext for discrimination."

*Budnick*, 518 F.3d at 1114.  Alternatively, plaintiff may demonstrate through direct

or circumstantial evidence that the challenged action was more likely than not

motivated by a discriminatory reason.  *Id.*, *citing McGinest v. GTE Serv. Corp.*,

360 F.3d 1103, 1122-23 (9th Cir. 2004).

Plaintiffs argue that their application for a special use permit was

constructively denied because Defendant imposed prohibitively expensive

conditions on the permit, rendering the Alamar Ranch project infeasible.  Plaintiffs

cite a number of projects approved by Boise County between 2000 and 2008 and

on which no similar restrictions were imposed.  *Plaintiff's Counter Statement of*

*Facts* (Docket No. 57-1) at 8-11.  Also, Plaintiffs cite statements by Boise County

Commissioner Terry Day and Planning & Zoning Administrator Patti Burke that,

Plaintiffs argue, demonstrate discriminatory motive.  *Plaintiff's Opposition*

**Memorandum Decision & Order - 14**

(Docket No. 57) at 16-19.

As discussed above, Defendant disputes that the conditions imposed in Plaintiff's special use permit amounted to a constructive denial, arguing that such conditions were not infeasible.  Regarding other projects approved without restrictions, Defendant contends that Plaintiffs have not shown those projects were "similarly situated" nor that permits for those projects were granted during the "relevant time period."  *Defendant's Motion* (Docket No. 52-1) at 15.  Defendant further argues that comments by particular Commissioners and the public are insufficient to establish discriminatory intent.  *Id.* at 16.

The Court finds that there are genuine issues of material fact concerning each of the four required elements.  Defendant's motion for summary judgment on this issue is therefore denied.

## 2.    Disparate impact

"To establish a prima facie case of disparate impact under the FHA, 'a plaintiff must show at least that the defendant's action had a discriminatory effect.'" *Budnick*, 518 F.3d at 1118 (citations omitted).  The burden then shifts to Defendant to demonstrate a "legally sufficient non-discriminatory reason." *Id.*, *citing Affordable Hous. Dev. Corp. v. City of Fresno*, 433 F.3d 1182, 1194 (9th Cir. 2006).  In examining disparate impact, the courts have looked to analysis of

**Memorandum Decision & Order - 15**

claims under the Age Discrimination in Employment Act.  *See Pfaff v. U.S. Dep't of Hous. and Urban Dev't*, 88 F.3d at 745; *Keith v. Volpe*, 858 F.2d 467, 482 (9th Cir. 1988).  In such cases, the plaintiffs must show action by defendant that is neutral on its face, but that has a "significantly adverse or disproportionate impact on persons of a particular [type]." *Pfaff*, 88 F.3d at 745, *quoting Palmer v. United States*, 794 F.2d 534, 538 (9th Cir. 1986)(other citations omitted).  The courts have looked to statistical evidence for proof of a disparate impact.  *Budnick*, 518 F.3d at 1118, *citing Pottenger v. Potlatch Corp.*, 329 F.3d 740, 749 (9th Cir. 2003)(finding summary judgment appropriate where disparate impact not supported by statistics).

As noted by Plaintiffs, the Complaint (Docket No. 1) includes no claim for relief under a theory of disparate impact.  Plaintiffs oppose Defendant's motion here, arguing that Plaintiffs should not be precluded from amending the complaint to conform to the evidence at trial under Rule 15(b)(2).   While the Court does not anticipate that such a motion will be made at trial, it agrees with the Plaintiffs that granting summary judgment on an issue not currently stated in the complaint is unnecessary and premature.   Accordingly, Defendant's motion for summary judgment on this issue is also denied.

### 3.    Prohibition against interference

To establish a prima facie case for a claim of prohibition against interference

under 42 U.S.C. § 3617, a plaintiff must show "(1) he was engaged in protected activity; (2) he suffered an adverse action; and (3) there was a causal link between the two." *Brown v. City of Tucson*, 336 F.3d 1181, 1191-92 (9th Cir. 2003)(citation omitted).  The adverse action in the second element must be "in the form of coercion, intimidation, threats, or interference." *Id.* at 1192.

"Interference" has been applied broadly so as "to reach all practices which have the effect of interfering with the exercise of rights under the federal fair housing laws." *United States v. City of Hayward*, 36 F.3d 832, 835 (9th Cir. 1994)(citations omitted).  In general, the courts have interpreted the language of the FHA to be broad and inclusive. *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 209, 93 S.Ct. 364 (1972); *Walker v. City of Lakewood*, 272 F.3d 1114, 1129 (9th Cir. 2001).  Given the broad interpretation to be applied, the Court here finds there are genuine issues of material fact on the issue of Plaintiffs' claim of interference.  On this issue, Defendant's motion for summary judgment is denied.

### 4.    Claims by Plaintiff YTC

Defendant requests summary judgment for all claims by Plaintiff YTC, asserting that YTC was not involved in requesting a reasonable accommodation, nor submitting an application for conditional use permit, from Defendant. Plaintiffs counter that YTC worked in concert with Alamar Ranch, in the effort to

**Memorandum Decision & Order - 17**

develop the residential treatment center to be known as Alamar Ranch.  *Plaintiff's Statement of Facts* (Docket No. 57-1) ¶ 20, *citing Oaas Declaration* (Docket No. 57-2) at 2.  Accordingly, Defendant's motion for summary judgment as to all claims by YTC is denied.

### 5.    Punitive damages

Finally, Defendant asserts that punitive damages are not allowed as a matter of law, and seeks summary judgment on the issue.  In general, with respect to municipalities, "no punitive damages are allowed unless expressly authorized by statute."  *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 261, n. 21, 101 S.Ct. 2748 (1981).  Although the FHA generally allows for punitive damages, there is no express authorization for punitive damages against municipalities.  42 U.S.C. § 3613(c); *Inland Mediation Bd. v. City of Pomona*, 158 F.Supp.2d 1120, 1158. As this Court noted in an earlier Memorandum Decision and Order (Docket No. 56), punitive damages against municipalities are viewed as against public policy "because such awards would burden the very taxpayers and citizens for whose benefit the wrongdoer was being chastised."  *City of Newport*, 453 U.S. at 263.  In a footnote, the Supreme Court suggested, "[i]t is perhaps possible to imagine an extreme situation where the taxpayers are directly responsible for perpetrating an outrageous abuse of constitutional rights" warranting an exception to public policy.

It is this exception that Plaintiffs ask the Court to contemplate, and that Defendant argues is not met as a matter of law.

Plaintiffs assert that evidence of taxpayers' "widespread and knowledgeable participation in discrimination" supports taxpayer responsibility, justifying the exception to public policy.  This knowledge and participation in discrimination consisted of comments to the Boise County Planning and Zoning Commissioners who denied Plaintiffs' application for conditional use permit, and to the Board of Commissioners who granted the permit, but with allegedly prohibitive restrictions. The Court finds that these comments do not amount to the sort of "extreme situation" or "direct responsibility" contemplated by the Supreme Court in *City of Newport* as necessary to warrant the imposition of punitive damages against a municipality.  That a contingent of taxpayers provided their opinions – discriminatory or not – to decision-makers on the County Commission and Board does not render taxpayers responsible for the County's ultimate decisions.  Even if those decisions are found to be "an outrageous abuse of constitutional rights," it is too great a leap to extend responsibility for such abuse to those simply providing input.   The public input may have been inflammatory; but, the record is insufficient to support a finding that it was so extreme, so uniform, or so pervasive as to remove responsibility for the decision from the putative decision-makers and

**Memorandum Decision & Order - 19**

place it on the shoulders of the taxpayers.

Because the Court finds that taxpayers do not share in the responsibility for the decision by the Commission, there is no basis to find an exception to the public policy against punitive damages awards against municipalities.  Accordingly, Defendant's motion for summary judgment on that issue is therefore granted.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Plaintiff's Motion (Docket No. 51) for Partial Summary Judgment is GRANTED in part, DENIED in part.  The Court finds that Plaintiffs have standing as aggrieved parties, but genuine issues of material fact remain as to whether Defendant failed to grant a reasonable accommodation.

IT IS FURTHER ORDERED THAT Defendant's Motion (Docket No. 52) for Summary Judgment is GRANTED with respect to punitive damages.  Punitive damages will not be allowed.  In all other respects, Defendant's Motion (Docket No. 52) for Summary Judgment is DENIED.

IT IS FURTHER ORDERED THAT Plaintiff's Motion (Docket No. 71) to Strike is MOOT.



DATED:  **April 27, 2010**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision & Order - 21**