Thomas A. Banducci (ISB: 2453)
tbanducci@bwslawgroup.com
Wade L. Woodard (ISB: 6312)
wwoodard@bwslawgroup.com
Dara Labrum (ISB: 7177)
dlabrum@bwslawgroup.com
**BANDUCCI WOODARD SCHWARTZMAN PLLC**
802 W. Bannock Street, Suite 500
Boise, ID 83702
Telephone     208.342.4411
Facsimile     208.342.4455

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ALAMAR RANCH, LLC, an Idaho limited liability company; and YTC, LLC, an Idaho limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF BOISE, a political subdivision of the State of Idaho,<br><br>Defendant. | Case No. 1:09-cv-00004 BLW<br><br>**DECLARATION OF CHARLES A. WILHOITE IN OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 9** |

I, Charles A. Wilhoite, declare as follows:

1. I have personal knowledge of the averments contained in this Declaration.

2. I maintain professional designations as a Certified Public Accountant/Accredited in Business Valuation, and an Accredited Senior Appraiser in business valuation. These

designations, among others, are described in my curriculum vitae, which is attached to my previously-submitted expert opinion.

3. My prior experience valuing businesses includes the valuation of assisted living facilities and educational entities, which have very similar business models to Alamar Ranch.

4. Based on my professional training and experience with regard to business valuation and related financial and economic analysis, I have been retained by Alamar Ranch, LLC ("Alamar Ranch" or the "Company") and YTC, LLC ("YTC"), to provide an independent estimate of the economic damages Alamar Ranch and YTC experienced as a result of the alleged violations of the Fair Housing Act committed by the County of Boise which prevented Alamar Ranch and YTC from developing a residential treatment center on property owned by YTC in Boise County.

5. For the purpose of completing this analysis and developing my opinions, I have reviewed various financial, corporate and related documents and information provided to me relating to Alamar Ranch, YTC and this litigation, and conducted independent research and analysis with regard to relevant industry (i.e., youth programs and miscellaneous residential care facilities), economic, and investment considerations.

6. I have developed my opinions based on consideration of (1) the *Uniform Standards of Professional Appraisal Practice* ("USPAP"), as promulgated by The Appraisal Foundation; (2) the *Principles of Appraisal Practice and Code of Ethics* and *Business Valuation Standards* of the American Society of Appraisers; (3) the *Statement on Standards for Valuation Services*, as issued by the American Institute of Certified Public Accountants Consulting Services Executive Committee; (4) generally accepted financial, economic, and valuation theory; and (5) relevant court precedents.

7.  In valuing Alamar Ranch, LLC, and YTC, LLC, it was necessary to establish the reasonableness of these entities' business projections.

8.  Among the factors I considered in developing my opinion about these business projections were industry and economic considerations such as the density of similar facilities in the local and regional market, the opportunity for the facility to fulfill an unmet or underserved need in the local and regional market, growth in the industry, growth in industry profit margins, companies with a similar operating focus to Alamar Ranch and the profit margins of these companies, competition with not-for-profit organizations which can offer services at lower cost, competition in the industry in general, the reasonableness of the tuition that Alamar Ranch proposed to charge, and access to qualified professionals to operate the facility and care for the residents.

9.  The methodology of examining industry and economic considerations is broadly used among valuation experts. These industry and economic facts and data are particularly relevant and necessary where, as with Alamar Ranch, the business is valued on future projections rather than historical data. Under these circumstances, industry and economic data are relevant in developing the discount rate.

10. My opinion is based upon sufficient facts and data. These facts and data, including the industry and economic considerations, are of a type relied upon by experts in the valuation field in forming opinions or inferences regarding the valuations of businesses for which there is no historical data.

11. The valuation method I have applied to the facts of this case, including examining economic and industry conditions, is a reliable methodology based on reliable principles. It is a

DECLARATION OF CHARLES A. WILHOITE
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT – PAGE 3

generally accepted method of valuing businesses for which there is no historical operating performance data.

12. The valuation process appropriate for valuing an unestablished business, including the process of examining relevant economic and industry conditions, is the same, regardless of the nature of the business being valued.

13. The following excerpt from *Recovery of Damages for Lost Profits* emphasizes that it is generally accepted practice within the financial, economic and valuation analysis community to calculate lost profits, even for unestablished businesses, based on projected operating results: "What needs to be shown to prove lost profits damages? It is a rare case in which lost profits damages can be computed down to the last penny. *It is far more common for claims of damages to be based on estimates or projections.* [Emphasis added.] The fact that damages cannot be measured exactly, however, has not prevented the courts from awarding damages for lost profits. The standard of proof is not a stringent one. It has been discussed in connection with the requirement of 'reasonable certainty.' Although certainty in the fact of damages is required, less certainty (or none at all) is required to prove the amount of damages. *See* §1.8. Once plaintiff has submitted convincing proof of a claim for lost profits damages, the fact that any proffered calculation is likely to be inexact at best and an estimate within a range of probability at worst has not deterred the courts from granting relief."[1]

Dunn's comments emphasize the concept that determining the amount of damages, based on estimated lost profits, is an issue of weighting evidence rather than admitting evidence. Further, and with regard to the estimation of damages relating to a new business venture, Dunn states: "This remark is particularly insightful. Economic forecasting is becoming more reliable—

---

[1] Robert L. Dunn, *Recovery of Damages for Lost Profits—Volume 1*, 6th ed. (Westport, CT: Lawpress Corporation, 2005), p. 414.

DECLARATION OF CHARLES A. WILHOITE
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT – PAGE 4

or the economic experts are becoming more persuasive. Earlier courts could see no way that lost profits of a new business could be forecast with the necessary reasonable certainty. Today's more sophisticated economic models are capable of providing satisfactory answers."[2]

The *Statement on Standards for Valuation Services 1—Valuation of a Business, Business Ownership Interest, Security, or Intangible Asset*, dated June 2007, makes several references to *prospective financial information* (for example, budgets, forecasts, and projections). The references emphasize that (1) it is generally accepted practice within the financial, economic and valuation analysis community to rely on prospective financial information provided by management, and (2) the achievement of forecasted results is dependent on actions, plans, and assumptions of management.

14.  Claims that it is unreasonable or contrary to generally accepted practice within the financial, economic and valuation analysis community to rely on the performances of comparable companies, or relevant industry performance, to estimate damages incurred by an unestablished business are unfounded. This approach to estimating economic damages is widely recognized within the financial, economic and valuation analysis community as the "yardstick," or comparable method. As stated in *Valuing a Business*, "The yardstick, or comparable, method requires the expert to identify companies or industries that are comparable to the plaintiff's company and plot the performance of the plantiff's company along the lines of the comparable companies' or industry's performances."[3] In completing my analysis and estimating economic damages incurred by Alamar Ranch and YTC, I have analyzed the projected performance of

---

[2] Ibid, p. 391.
[3] Shannon P. Pratt, Robert F. Reilly, and Robert P. Schweihs, *Valuing a Business*, 4th ed. (New York: McGraw-Hill, 2000), p. 870.

DECLARATION OF CHARLES A. WILHOITE
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT – PAGE 5

each entity relative to the performances of comparable entities within the relevant industry classification. The process completed by me is consistent with generally accepted practice.

I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct to the best of my knowledge and belief.

DATED this 22 day of November 2010.

_____
Charles A. Wilhoite

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 22nd day of November 2010, a true and correct copy of the within and foregoing instrument was served on the following registered participants via automatic electronic notice from the Court's ECF system.

| | |
|---|---|
| John M. Howell | jhowell@brassey.net |
| Andrew C. Brassey | acb@brassey.net |

/s/ Thomas A. Banducci
Thomas A. Banducci