Andrew C. Brassey, ISB No. 2128
Richard C. Mellon, ISB No. 1602
BRASSEY, WETHERELL & CRAWFORD LLP
203 W. Main Street
P.O. Box 1009
Boise, Idaho 83701-1009
Telephone: (208) 344-7300
Facsimile: (208) 344-7077

Attorneys for County of Boise

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ALAMAR RANCH LLC, an Idaho limited liability company; and YTC, LLC, an Idaho limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF BOISE, a political subdivision of the State of Idaho<br><br>Defendant. | Case No. 1:09-CV-00004<br><br>**DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION IN LIMINE #9** |

COMES NOW the Defendant in the above-entitled action, by and through its counsel of record, Brassey, Wetherell & Crawford, LLP, and submits this Reply to Plaintiffs' Opposition to Defendant's Motions in Limine #9 (Dkt. No. 126). In summary, Defendant's Motion in Limine #9, regarding Mr. Charles Wilhoite's proposed "expert" testimony as to estimated future business losses of Plainitffs should be granted.

As noted on page 3 in Boise County's original memorandum supporting its motion in limine, the essence of Mr. Wilhoite's opinion is in the income projections found in exhibit 7, page 29, of the Wilhoite report. As further noted in the original brief, these projections are not those of Mr. Wilhoite himself, but of Plaintiffs' management, simply postponed by six months. This is conceded verbatim by Mr. Wilhoite in his deposition. *See* Deposition of Charles Wilhoite, p. 87, LL. 8-18; p.76, L.25-p.78, L.19; *and* p. 99, L.4-p.101, L7. In his recent Declaration in Opposition to Defendant's Motion in Limine, paragraph 4, Mr. Wilhoite declares that "I have been retained by [Plaintiffs] to provide an independent estimate of the economic damages [Plaintiffs] suffered." That may have been what he was retained to do, but it was demonstrably not what he *did* do, a fact admitted by him. It was, and is, Boise County's fundamental contention that such an opinion or projection or estimate–whatever it is termed–is was not developed on the basis of independent, objective analysis or methodology. Plaintiffs time and again attack Boise County's motion on the grounds that it is merely a "garbage in, garbage out" argument. This is Plaintiffs' chosen term and, while a close reading of Mr. Wilhoite's report, coupled with examination of his deposition testimony, will suggest the presence of a fair amount of the material in question, Boise County's motion goes to the very essence (independence and reliability) of the Wilhoite approach itself.

This Court recently said in *United States v. National Rehab Partners*, 2010 WL 1248236 (D.Idaho 2010) that *Daubert* requires that "(1) [the expert witness's] opinion [be] based upon sufficient facts or data, (2) the opinion [be] the product of reliable principles and methods; and (3) the witness [have] applied those principles and methods reliably to the facts of the case."

As pointed out in Boise County's opening memorandum, Mr. Wilhoite had never performed a business evaluation of a residential treatment facility previously. He is eager to say that

he has valued "assisted living facilities and educational entities," but he fails utterly to tackle the task of showing how such facilities correlate to the valuation of an Alamar-type residential treatment facility except to say that they "have very similar business models." Declaration of Charles A. Wilhoite, paragraph 3. That statement alone does not suffice to establish a sufficient nexus between the attributes of an institution that cares for, for example, Alzheimer's victims and the characteristics of a *successful* residential treatment facility for youths. Some indication of Mr. Wilhoite's confidence, or lack thereof, in his approach–one hesitates to say methodology–is that on the day prior to his deposition, he felt obliged to contact Lon Woodbury, an educational consultant, his first contact with any sort of professional associated in any way with residential treatment facilities for adolescents. Further, Mr. Woodbury to a large extent relied simply upon the reputation of the proposed executive director of Alamar Ranch, Amy Jeppesen, to validate management's assumptions. However, the court will note that Plaintiffs argue vehemently that such information is superfluous--unnecessary to the reliability of an accomplished business valuation expert such as Mr. Wilhoite because there are so many other tools upon which he may rely. Boise County has previously discussed at page 5 of its opening memorandum what it believes is the inherent unreliability of extrapolating a projected profit of Alamar Ranch from the operating margins of companies that are vastly larger, more diverse and, perhaps most importantly, *established;* or, in the case of the one entity that might hypothetically be deemed comparable in size to Alamar Ranch(assuming of course that it performed as projected, a somewhat circular method of reasoning), that provided an entirely different set of services in an entirely different way). Yes, Boise County would concede that these data are indeed probably "garbage in," but their incorporation into the

process of Mr. Wilhoite's evaluation as the best "comparators" available suggests that the process itself is so flawed as to be inherently unreliable under *Daubert* principles.

Although it is difficult to fasten Plaintiffs' opposition to any particular foundation, the ultimate, and relevant issue to which Mr. Wilhoite's testimony is apparently directed is a projection of Alamar Ranch's lost profits. If the substance of the proffered testimony does not assist the trier of fact to understand the evidence or to determine a fact in issue, it should not be admitted. *Primiano v. Cook*, 598 F.3d 558 (9th Cir. 2010). The overall valuation of a business is one thing–some of the standards and materials mentioned in Plaintiffs' oppositional papers are apparently acceptable as to certain facets of that operation. But in this case, the *relevant* issue is the very existence (or not) of lost profits of an unestablished, hypothetical business venture and, assuming they can be proved at all with reasonable certainty, their amount. Ultimately, it is necessary for Plaintiffs to address at length the legal bases upon which lost profits may be awarded. Indeed, both the Plaintiffs' Opposition (page 8) and Mr. Wilhoite's Declaration (page 4, paragraph 13) cite the same paragraph from a legal treatise entitled *Recovery of Damages for Lost Profits*, by Robert Dunn. Both of these documents highlight the same sentence: ***"It is far more common for claims of damages to be based on estimates or projections."*** As far as it goes, Boise County would not disagree with this statement. The cases suggest that while claims may be based on estimates or projections, plaintiffs do not necessary recover and their evidence is not always admissible. The law still maintains a healthy skepticism about lost profits and particularly so as regards an unestablished, hypothetical business. For instance in *Clark v. Int'l Harvester Co.*, 99 Idaho 326, 346, 581 P.2d 784 (1978), Justice Bakes wrote:

> Although prospective profits hoped to be derived from a business which is not yet established but merely in contemplation are ordinarily too speculative to be recoverable, [citations omitted], a plaintiff is not categorically denied the right to recover lost profits simply because he is engaged in a relatively new business.

This is a self-evident proposition. The hypothetical business not only has no track record, it hasn't even a track. Still, Plaintiffs take comfort in the general statement of *Recovery of Damages for Lost Profits* that standards for admissibility of evidence and recovery of lost profits have been significantly eroded. This is not entirely true, particularly in the case of a nonexisting business, and the discussion that follows the paragraph cited from *Recovery of Damages for Lost Profits* suggests that of the various methods that have been pursued for recovering lost profits–particularly where the business has not been established and has no operating history, the least reliable are probably (1) industry averages, e.g., *Polaris Industries v. Plastics, Inc.* 299 N.W.2d 414 (Minn. 1980); and (2) the experience of comparable companies, e.g., *Montage Group, Ltd, v. Athle-Tech Computer Systems, Inc.*, 889 So.2d 180 (Fla. App. 2004). Beyond question, the experience of other companies as a basis for expert testimony as to lost profits requires that there be a demonstrable comparability between the hypothetical business and those to which it seeks to be compared. *McNamara Wilmington Mall Realty Corp.*, 466 S.E. 2d 324 (N.C. 1996); *review den.* 471 S.E.2d 72-73 (1996); *Cell, Inc. V. Ranson Investors*, 427 S.E.2d 447 (W.Va. 1992). deficiency in reliability of the companies of the most important of those tools. To the extent that Plaintiffs' expert relies upon either of these data as foundation for his "opinion," Boise County believes such reliance is misplaced.

Wherefore, Boise County's motion in limine to exclude the opinions of Charles Wilhoite regarding Alamar Ranch's hypothetical lost profits should be granted.

DATED this  30th  day of November, 2010.

                                              BRASSEY, WETHERELL & CRAWFORD

                                        By  /s/
                                               Andrew C. Brassey, Of the Firm
                                               Attorneys for Defendant County of Boise

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this  30th  day of November, 2010, I served a true and correct copy of the foregoing upon each of the following individuals by causing the same to be delivered by the method and to the addresses indicated below:

| | | |
|---|---|---|
| Thomas A. Banducci | ____ | U.S. Mail, postage prepaid |
| tbanducci@bwslawgroup.com | ____ | Hand-Delivered |
| Wade L. Woodard | ____ | Facsimile |
| wwoodard@bwslawgroup.com | _x_ | CM-ECF |
| Banducci Woodard Schwartzman PLLC | ____ | Email |
| 802 W. Bannock Street, Suite 500 | | |
| Boise, Idaho 83702 | | |

                                               /s/
                                            Andrew C. Brassey