UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ALAMAR RANCH, LLC, an Idaho limited liability company; and YTC, LLC, an Idaho limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF BOISE, a political subdivision of the State of Idaho,<br><br>Defendant. | Case No. 1:09-CV-004-BLW<br><br>**MEMORANDUM DECISION AND ORDER ON PLAINTIFFS' MOTIONS IN LIMINE (Dkts. 95, 96, 97, 98, 99, 101)** |

## INTRODUCTION

Before the Court are Plaintiffs' Motions in Limine to: Prevent Argument and Evidence that Plaintiffs had a Duty to Request an Accommodation After Boise County Entered its Decision (Dkt. 95); Preclude Evidence of Proposed Federal Legislation (Dkt. 96); to Preclude Argument and Evidence of Illegal Considerations (Dkt. 97); Preclude Argument and Evidence that Conditions were Reasonable Because Alamar Ranch was a Commercial Development (Dkt. 98); Preclude Argument and Evidence that RTC's are

Dangerous (Dkt. 99); and Prohibit Opinion of William Reynolds and Any Argument Concerning the Motives of the Wilderness Ranch First District for Approving the Alamar Ranch Development (Dkt. 101). The motions have been fully briefed and the Court enters the following orders.

**1.    Plaintiffs' Motion to Prevent Argument and Evidence that Plaintiffs had a Duty to Request an Accommodation After Boise County Entered its Decision**

Plaintiffs seek to prevent any argument or evidence that Plaintiffs had a duty to request a reasonable accommodation after Boise County entered its order denying Plaintiffs' Conditional Use Permit (CUP) application. Plaintiffs argue that the question of who had the duty is a legal question inappropriate for the jury and that the law does not support Defendant's position that the duty fell on Plaintiffs. Plaintiffs maintain that the duty fell on Defendant to engage in an interactive process about the accommodation needed.

Defendant responds that any request for a reasonable accommodation must be made with particularity and that Plaintiffs failed to do so. Defendant further argues that Plaintiffs are essentially asking the Court to rule, as a matter of law, that Plaintiffs properly requested a reasonable accommodation.

To establish discrimination from a defendant's failure to reasonably accommodate, a plaintiff must show that: (1) the residents of a facility at issue suffer from a handicap as defined by the FHA; (2) defendant knew or reasonably should have known of the

handicap; (3) an accommodation may be necessary in order to afford residents an equal opportunity to the use and enjoyment of the dwelling; and (4) defendant refused to make the accommodation. *F.G. Budnick v. Town of Carefree*, 518 F.3d 1109, 1119 (9th Cir. 2008).

The Ninth Circuit requires the party from whom accommodation is sought to engage in an "interactive process" triggered by notice of disability and desire for accommodation. *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002) (discussing the mandatory interactive process in the employment discrimination context), *Barnett v. U.S. Air., Inc.*, 228 F.3d 1105, 1114 (9th Cir. 2000) (same). The purpose of the process is to clarify individual needs and identify appropriate accommodation. *See Vison*, 288 F.3d at 1154. The process involves meeting with the party who requests an accommodation, requesting information about the condition and limitations, asking about the specific request, showing some signs of considering the request, and discussing available alternatives if the request is too burdensome. *See Barnett*, 228 F.3d at 1115.

Plaintiffs argue that the law is clear that Defendant was required to engage in the interactive process because Plaintiffs notified Defendant of the disabled status of the residents and the need for accommodation in the CUP application and during the hearing, and the Board acknowledged the need on several occasions. Plaintiffs allege that they requested accommodation in the form of a "change, waiver or exception" for each failed CUP criteria.

However, by seeking to prohibit argument that Plaintiffs were required to request accommodation after the CUP denial, Plaintiffs ask the Court to assume, and therefore essentially rule, that the facts establish that Plaintiffs sufficiently requested an accommodation.

As Defendant points out, *Barnett* and *Vinson* involved the triggering of the interactive process after a *specific* accommodation requested by the employee, not just a general request that he be accommodated. In contrast, Plaintiffs do not indicate what specific accommodation they requested other than a general request for an exception or waiver for each criterion they failed on the application. They do not indicate what change, waiver, or exception they sought, except for approval of the application as submitted. Plaintiffs argue that Defendant knew that the project depended on the number of beds permitted, but do not claim that they informed the Board of the number of beds necessary for the project apart from the number originally requested. And the Court cannot hold that the application itself constitutes, as a matter of law, a request for reasonable accommodation that triggered a duty to engage in an interactive process. *See Budnick*, 518 F.3d at 1119.

The Court previously decided that neither party had shown an entitlement to summary judgment regarding reasonable accommodation because the facts in that regard were in dispute. *See Order*, Dkt. 79 at 11-13. The Court cannot rule at this time that the same facts support a decision, as a matter of law, that Plaintiffs sufficiently requested

accommodation.

Plaintiffs also seek to prohibit Defendant from arguing that Plaintiffs had a duty to request an accommodation, in the form of appealing the Board's decision or otherwise requesting the Board approve more beds to make the project financially viable, after the Board made its decision on the CUP. In support of their request, Plaintiffs argue that the FHA is violated when the plaintiff is *first* denied a reasonable accommodation, irrespective of any administrative remedies that may be granted after the denial. *See Bryant Woods Inn, Inc v. Howard Co. Maryland*, 124 F.3d 597, 602 (4th Cir. 1997); *Tsombanidis v. West Haven Fire Dep't.*, 352 565, 579 (2d Cir. 2003). This argument assumes that the Board's decision on the CUP constituted the denial of a reasonable accommodation that Plaintiffs had already requested. Plaintiffs argue that they requested an accommodation at the hearing, and that Defendant was well aware of the need for accommodation. But the Court is still unwilling to rule that, as a matter of law, the facts establish that Plaintiffs successfully requested a reasonable accommodation and that the Board's decision constituted the denial of the request.

Ultimately, it is the Plaintiffs' burden to prove a violation of the Fair Housing Act due to Defendant's failure to reasonably accommodate. The Court has already held that Plaintiffs have not yet satisfied their burden on the claim. *See Order*, Dkt. 79 at 13. Therefore, the Court will not limit Defendant's potential arguments regarding whether Plaintiffs have satisfied their burden at this stage of the case.

For these reasons, the Court will deny Plaintiffs' Motion on this ground, but will allow Plaintiffs to pursue this issue at trial.

**2.      Plaintiff's Motion to Preclude Evidence of Proposed Federal Legislation**

Plaintiffs seek to preclude Defendant from introducing any evidence of failed federal legislation related to residential treatment centers.  Specifically, Plaintiffs request an order prohibiting any mention, reference, question, or attempt to convey to the jury in any manner, that legislation was introduced in the federal legislature that, if enacted, might have impacted residential treatment centers.   Plaintiffs refer to H.R. 911, entitled "Stop Child Abuse in Residential Programs for Teens Act of 2009," attached to the report of Michael Jones, one of Defendant's experts.

Defendant does not oppose Plaintiffs' request and states that it does not intend to introduce H.R. 911 into evidence nor use it in argument.  Therefore, Plaintiff's Motion is granted and Defendant is prohibited from any mention of H.R. 911 or any proposed federal legislation impacting residential treatment centers.

**3.      Plaintiffs' Motion to Preclude Argument and Evidence of Illegal Considerations**

Plaintiffs seek to preclude any argument that the Conditional Use Permit (CUP) conditions imposed by Defendant were reasonable or justified because of illegal considerations.  Specifically, Plaintiffs seek to preclude argument that the Board's decision was justified because Alamar Ranch could cause a decrease in property values

and the residents of Alamar Ranch were dangerous. Plaintiffs argue that these considerations are illegal and should not be argued to the jury. Defendants respond that Plaintiffs bear the burden of proving that the Board's decision was discriminatory and violated the Fair Housing Act and that evidence of the Board's justifications, illegal or otherwise, are directly probative of the issues to be resolved at trial.

The various matters considered by the Board are certainly relevant to the question of whether it acted in a discriminatory fashion and violated the FHA. For example, concerns about a development's impact on adjoining property values and public safety are valid considerations in zoning decisions. On the other hand, they may not serve as a surrogate or pretext for discrimination. However, whether a decision-maker's concerns for property values and public safety are legitimate or pretextual is a question of fact for the jury. Granting Plaintiffs' motion would take that issue away from the jury. This, the Court is not willing to do.

The Court will instruct the jury, either as the evidence is presented or at the conclusion of the trial, that concerns over public safety and property values may properly be considered in making zoning decisions, but not if those concerns are based upon the handicaps of the proposed occupants at the Alamar Ranch property. Properly instructed, the jury will then determine the ultimate question of whether the Board's decision was motivated by discriminatory animus, or by legitimate, non-discriminatory concerns. Plaintiff's motion will be denied.

### 4. Plaintiffs' Motion to Preclude Argument and Evidence that Conditions Were Reasonable Because Alamar Ranch Was a Commercial Development

Plaintiffs seek to preclude any argument from Defendant that the conditions imposed in the Conditional Use Permit (CUP) were reasonable because Alamar Ranch was a commercial development. Plaintiffs argue that the Board characterized the project as residential in its April 21, 2008 Decision and Order, and that a Commissioner testified that he never thought about the project as a commercial project.

Defendant responds that Plaintiffs' argument rests on only one sentence in the Board's decision when the record also contains discussion and information that the proposed facility fit within the definition of "commercial use." Defendant argues that Plaintiffs essentially seek a court ruling that the project was, in fact, residential.

Plaintiffs argue that a group home for more than eight is categorized as "residential use" under Defendant's Zoning and Development Ordinance. However, Plaintiffs' argument assumes that a residential use cannot have commercial aspects or that a development project must necessarily be classified under one use without citing any authority for the restriction. The Board did not analyze the project as a purely residential or commercial use, but under the standards for "conditional use." *See Banducci Aff.* Ex. 12 at 6.

Although Plaintiffs cite the Board's decision as evidence that the Board considered the Alamar Ranch development a residential use, the very same decision makes several

mentions of Alamar Ranch's commercial nature and demonstrates the variety of considerations the Board undertook in making a decision. *See Banducci Aff.* Ex. 12 at 8 (characterizing project as a "commercial development"). And Defendant relies on the Board's various considerations to explain the reasons for the conditions imposed. Thus, the commercial aspects of the project are relevant to Defendant's case.

Further, a ruling that precludes this development of evidence or line of argument would essentially be a decision that the project was a residential development and that the Board's consideration of commercial aspects of the project was improper. The Court is unwilling, and unprepared, to make that substantive ruling. Plaintiffs have the opportunity to offer evidence of the residential nature of the project, including the Board's decision and commissioner testimony.

Plaintiffs do not articulate why the argument would unfairly prejudice their case, confuse the issues, or mislead the jury. Therefore, the Court will deny Plaintiffs' Motion on this ground, but allow Plaintiffs to pursue the issue at trial.

### 5. Plaintiffs' Motion to Preclude Argument and Evidence That RTCs Are Dangerous

Plaintiffs seek to preclude any argument or evidence from Defendant that residential treatment centers (RTCs) are dangerous or are places where abuse of children often occurs. Plaintiffs seek to preclude this evidence based on the fact that two Commissioners testified that they did not rely on evidence that residents of RTCs can be

abused and were not concerned that children would be mistreated at Alamar Ranch. Plaintiffs also argue that the evidence and argument is highly inflammatory and that resulting prejudice far outweighs the probative value of the evidence.

Defendant argues that evidence of abuse at other RTCs of similar size, and the opinions of psychological and child welfare organizations are directly probative and relevant to the Committee's decision, as evidenced by their inclusion in the Board's April 21, 2008 Decision and Order.

The Court agrees with Defendant that the evidence is relevant to the Board's decision, as the information is cited in the Board's Order. *See Banducci Aff.* Ex. 12 at 18. The considerations of the Board are directly at issue in this trial, and Defendant should be allowed to present evidence of these considerations. Further, the statements of two Commissioners do not authoritatively establish that the entire Board was unconcerned with the safety of the children at Alamar Ranch. The fact that the two Commissioners did not rely on the evidence in making their decision does rule out any consideration of the evidence, especially when the decision issued by the Board specifically mentions this concern.

The Court acknowledges that the probative value of the evidence may have been limited by the Commissioner's testimony and that the information may be prejudicial to Plaintiffs' case. However, on balance, the probative value of the evidence is not outweighed by possible prejudice to Plaintiffs. Plaintiff's arguments go to the weight

which should be given such evidence, rather than its admissibility. Evidence of the Board's considerations is directly probative of the issues in this case and should not be excluded at this stage. The Court will deny Plaintiffs' Motion.

6. **Plaintiffs' Motion to Prohibit Opinion of William Reynolds and Any Argument Concerning the Motives of the Wilderness Ranch First District for Approving the Alamar Ranch Development**

Plaintiff seeks to exclude opinions or arguments about the motives of the Wilderness Ranch Fire District (WRFD) for approving the Alamar Ranch development on grounds that Defendant's witness, William Reynolds, lacks personal knowledge of WRFD's motives and that Defendant lacks any evidence that WRFD had an improper motive for approving the project. Defendant responds by explaining its intent to introduce evidence pertaining to the circumstances of WRFD's approval of the project. Defendant also asserts that Reynolds' testimony will be probative of the circumstances of the approval, due to his position on the board of another fire district and attendance at a meeting discussing the project. Defendant further explains that it identified Reynolds as an expert as a precaution and that Reynolds might not testify as an expert pursuant to Federal Rule of Evidence 702.

Both parties agree that the Alamar Ranch property was annexed by WRFD, and that WRFD approved the original Alamar Ranch plan that did not contain a second bridge for a secondary access road. *See Plaintiffs' Brief*, Dkt. 101 at 2; *Defendant's Response*, Dkt. 138 at 2-3. One of the Board's conditions was the maintenance of a secondary

access road. Presumably, Defendant seeks to introduce evidence of WRFD's improper motives to rebut Plaintiffs' use of WRFD approval of its original plan to support its case.

At first blush, it would seem that WRFD's motive would not be relevant. If WRFD approved the plan without a secondary access road, it would not matter whether it had some secondary reason for doing so. However, without hearing the evidence, the Court cannot altogether exclude any argument of improper WRFD motives for approving the project. Prior to offering evidence of any improper motive on the part of WRFD, counsel for the Defendant will notify the Court so that the matter can be taken up outside the presence of the jury.

Regarding Reynolds' testimony, the Court agrees that any fact testimony given about the specific motives behind WRFD's approval without personal knowledge would be improper. Reynolds was a former board member of the Clear Creek Volunteer Fire Department (CCVFD) and volunteer firefighter. *Banducci Aff.* Ex. 22. CCVFD did not believe that the original Alamar Ranch plan was appropriate from a fire safety standpoint and believed a second bridge was necessary. *Defendant's Response* at 2. While Reynolds may offer fact testimony based on his personal knowledge regarding CCVFD's opinion of the Alamar Ranch plan or the motives and incentives weighed by CCVFD, Defendant has not provided any evidence that Reynolds has any personal knowledge of the specific motives or incentives of WRFD. Thus, any fact testimony given about specific motives behind any action of WRFD without personal knowledge would be speculation on

Reynolds' part.

In regards to Reynolds' expert opinion about WRFD's incentives, it is unclear whether this would be the proper subject of expert testimony. It is also unclear whether he could properly offer such expert testimony based upon his service on the CCVFD board, his fire safety training and experience, his participation in meetings about Alamar Ranch, and his review of the Alamar Ranch plans. If Reynolds' specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue and if he is qualified by knowledge, skill, experience, training or education, he may offer expert testimony where: (1) the opinion is based upon sufficient facts or data, (2) the opinion is the product of reliable principles and methods; and (3) he has applied those principles and methods reliably to the facts of the case. *See* Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).

If Reynolds were to offer a lay opinion, it must be based on his personal knowledge and perception and not his specialized knowledge or training. *See* Fed. R. Evid. 701; *United States v. Durham*, 464 F.3d 976, 982 (9th Cir. 2006). Thus, Reynolds would be limited to opinion testimony stemming from his personal perception; any opinion about WRFD's incentives not based on his personal knowledge of the incentives would be purely speculative. While his fact testimony may be probative of whether the original plan was appropriate, it is difficult to see how his lay opinion testimony about

specific motives behind the WRFD decision would be anything more than speculation.

While the Court is inclined to think that Reynolds could not offer proper lay or expert opinion testimony concerning WRFD's motive, it will permit the Defendant to argue the matter and, if necessary, present evidence outside the presence of the jury. The Court will therefore grant Plaintiff's Motion to the extent it seeks to preclude Reynolds from testifying as to factual matters about which he has no personal knowledge; however, the Court will reserve ruling on whether it is proper for Reynolds to offer expert or lay opinion testimony concerning WRFD's motives in approving the Alamar Ranch project.

## ORDER

**IT IS ORDERED:**

1. Plaintiffs' Motion in Limine to Prevent Argument and Evidence that Plaintiffs had a Duty to Request an Accommodation After Boise County Entered its Decision (Dkt. 95) is **DENIED.**

2. Plaintiffs' Motion in Limine to Preclude Evidence of Proposed Federal Legislation (Dkt. 96) is **GRANTED**.

3. Plaintiffs' Motion in Limine to Preclude Argument and Evidence of Illegal Considerations (Dkt. 97) is **DENIED.**

4. Plaintiffs' Motion in Limine to Preclude Argument and Evidence that Conditions were Reasonable Because Alamar Ranch was a Commercial

Development (Dkt. 98) is **DENIED.**

5. Plaintiffs' Motion in Limine to Preclude Argument and Evidence that RTC's are Dangerous (Dkt. 99) is **DENIED**.

6. Plaintiffs' Motion in Limine to Prohibit Opinion of William Reynolds and Any Argument Concerning the Motives of the Wilderness Ranch First District for Approving the Alamar Ranch Development (Dkt. 101) is **GRANTED** in part and **RESERVED** in part.



DATED: December 5, 2010

_____
B. Lynn Winmill
Chief Judge
United States District Court